# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 13, 2015 Session

## DANIEL RICHMOND v. VANGUARD HEALTHCARE SERVICES, LLC ET AL.

### Appeal from the Circuit Court for Bedford County
### No. 2013-CV-12702      Franklin L. Russell, Judge

_____

### No. M2014-02461-COA-R3-CV – Filed January 29, 2016

_____

The former administrator of an assisted living facility appeals the summary dismissal of his claim for retaliatory discharge under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, and common law. Plaintiff contends he was fired in retaliation for initiating an internal investigation and submitting an internal report to his supervisors concerning an incident that arose when the son of an elderly resident observed an old bandage stuck to the bottom of his mother's foot, which was revealed when her sock was removed in order to check the dressing for a wound on her ankle. Defendants contend Plaintiff's claims are legally deficient because there was no neglect or illegal activity to report, and that Plaintiff grossly overreacted after being informed that an old bandage was found on the ball of a resident's foot in a sock when the resident's wound, which was on her ankle, was properly dressed and bandaged. Defendants also rely on the fact that Plaintiff did not file a qualifying internal or external report of neglect until after he was fired. The trial court summarily dismissed the TPPA claim stating "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not 'abuse and neglect' as defined in the statute." The court dismissed the common law whistleblower claim because Plaintiff did not show that Defendants engaged "in illegal conduct or in any way . . . posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock." Plaintiff appeals the summary dismissal of his claims under the TPPA and common law. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. J. STEVEN STAFFORD, P.J., W.S., filed a dissenting opinion.

Brian Christopher Winfrey, Nashville, Tennessee, for the appellant, Daniel Richmond.

Benjamin Henry Bodzy and Megan Michelle Sutton, Nashville, Tennessee, for the appellees, Vanguard Healthcare Services, LLC and Glen Oaks Health and Rehabilitation.

## OPINION

Daniel Richmond ("Plaintiff") was hired in 2012 by Vanguard Healthcare Services, LLC, as the Nursing Home Administrator of Glen Oaks Health and Rehabilitation in Shelbyville, Tennessee, an assisted living, rehabilitation, and nursing home facility owned and operated by Vanguard Health Services. Plaintiff's primary responsibility was to oversee the day-to-day operations of Glen Oaks.

Willar Grace Harris, an elderly resident at Glen Oaks, had a persistent wound on her ankle that required daily monitoring at the facility as well as weekly visits to the Wound Care Clinic for treatment. Richard Sanders, the son of Ms. Harris, was with his mother when she went to the Wound Care Clinic on September 4, 2013, for a routine, weekly examination of the wound on her ankle. When an attendant removed her sock to examine the wound on the ankle there was an old bandage on the bottom of Ms. Harris' foot. The bandage, which was dated "8/11/2013," was given to Mr. Sanders.

When his mother's visit at the Wound Care Clinic was completed, Mr. Sanders travelled directly to Glen Oaks to register a formal complaint about his mother's care. When he arrived at Glen Oaks, Mr. Sanders, who was visibly upset and angry, confronted Mary Beth Bayman, the Director of Nursing who was primarily responsible for Ms. Harris' care. Ms. Bayman then escorted Mr. Sanders to Plaintiff's office where the three of them discussed Mr. Sanders' concerns. Ms. Bayman explained that it was not necessary to fully remove the sock to examine, dress and bandage the wound on Ms. Harris' ankle; instead, she would pull the sock down far enough to determine that the ankle was appropriately dressed and bandaged. Plaintiff informed Mr. Sanders that an internal investigation would be initiated immediately. Plaintiff prepared a written report of the incident, submitted it to his supervisors, and gave Mr. Sanders a copy of the internal report.[1]

Two days later, on September 6, 2013, Plaintiff's employment was terminated. Plaintiff states that he was terminated in retaliation for reporting the incident concerning Ms. Harris. Vanguard Healthcare Services, LLC, and Glen Oaks Health and Rehabilitation ("Defendants") insist his employment was terminated for several reasons, including his overreaction to and improper handling of the incident concerning Ms. Harris and Plaintiff's history of overreacting to routine matters, which resulted in clashes

---

[1] The internal report was given to Mr. Sanders and submitted to Plaintiff's supervisors on the same day as Ms. Harris' visit to the Wound Care Clinic, September 4, 2013.

with staff at Glen Oaks and with Plaintiff's supervisor, Mark Miller. Plaintiff counters stating he had never been issued a formal written reprimand prior to his termination.

After his termination, Plaintiff submitted a written report to DHS concerning the alleged neglect of Ms. Harris.[2]

On October 13, 2013, Plaintiff commenced this action asserting a claim for retaliatory discharge in violation of the Tennessee Adult Protective Act ("TAPA"), Tenn. Code Ann. § 71-6-105; the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 56-1-304; and Tennessee common law. Defendants filed an answer denying any liability. Thereafter, discovery was taken, including the deposition of Plaintiff and representatives of Defendants.

Defendants subsequently moved for summary judgment seeking the dismissal of all claims. Defendants asserted that Plaintiff's retaliation claim for violation of the TAPA should be summarily dismissed because he failed to report the alleged neglect in the manner required by the statute.[3] As for the TPPA and common law claims, Defendants asserted that they fail because (1) Defendants were not engaged in illegal activity; and (2) Plaintiff did not timely report the alleged neglect to anyone other than Defendants. Further, Defendants also asserted that the TPPA claim fails because Plaintiff is unable to establish that his refusal to remain silent about illegal activities was the sole cause of his termination.

Pursuant to a Memorandum Opinion entered on November 26, 2014, the trial court summarily dismissed all claims; it reads in pertinent part:

> The case was filed as a claim under the [TPPA], the [TAPA], and as a unlawful termination claim under Tennessee common law arising from the termination of Plaintiff Daniel Richmond ("Employee") from his employment as Chief Licensed Nursing Home Administrator at Defendant Glen Oaks Health and Rehabilitation ("Glen Oaks"), owned by Defendant

---

[2] No report was submitted to the Tennessee Department of Human Service ("DHS") or anyone outside of Plaintiff's chain of command until after Plaintiff was terminated.

[3] The TAPA provides that "[a]ny person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation, shall report [such abuse]." Tenn. Code Ann. § 71-6-103(b)(1). This reporting obligation can be satisfied by: (1) reporting the abuse or neglect directly to DHS; or (2) by internally reporting pursuant to specific company procedures that have been approved by DHS. *Wynn v. Five Star Quality Care Trust*, No. 3:13-cv-01338, 2014 WL 5107057, at *3 (M.D. Tenn., Oct. 10, 2014). TAPA provides a civil cause of action for any person who suffers a detrimental change in their employment status by reason of making a qualifying report. Tenn. Code Ann. § 71-6-105.

Vanguard Healthcare. For the reasons set out below, summary judgment will be granted.

On September 4, 2013, the son of a patient at Glen Oaks complained that the Director of Nursing at Glen Oaks' facility in Shelbyville, Mary Beth Bayman, had not properly cared for a patient. The specific allegation is that a bandage was found in one of the patient's socks beneath her foot after the bandage had previously been on the ankle of the patient. The injury for which the bandage had originally been placed on the patient was, at the time of discovery of the old bandage, covered by a fresh bandage. There is no sworn expert evidence before this trial court that the presence of the old bandage was in any way detrimental to the health and safety of the patient.

The employment of the Employee was terminated two days later, on September 6, 2013, after the Employee had reported internally the alleged poor care provided by Ms. Bayman, that is, to individuals on the Defendants' payroll, initiating an investigation of the incident. The Complaint alleges that the Defendants "expressed their disdain" and "expressed their hostility" toward and "ultimately terminated" the Plaintiff Employee because he "refused to keep the incident quiet or diffuse the allegations". . . . There is no mention in the Complaint of any allegation that the Employee was terminated because he refused to participate in any illegal activity. It is uncontroverted that the Plaintiff Employee did not report the alleged abuse to anyone outside of the Defendants until after his termination. It is also undisputed that the Defendants have a policy for reporting patient abuse, but it is undisputed that the policy had never been submitted to the Tennessee Department of Human Services for approval.
. . .

As to the TAPA claim, the Employee would have had to report the abuse either to the Department of Human Services, or if, and only if, DHS had approved Glen Oaks' internal reporting scheme, the Employee would have had to report the alleged abuse following the internal procedures in order to be entitled to protection. In this case it is undisputed that the internal Glen Oaks procedure had not been approved by DHS before being fired. The Defendants are entitled to summary judgment as to the TAPA claim.

In order to establish a claim under TPPA, the Employee would have to prove, among other things, that he had refused to participate in or remain silent about illegal activities and that the refusal to participate in or remain silent about illegal activities was the sole cause of his termination. First, there is not in the Complaint any allegation of a refusal to participate in illegal activity, and there is no evidence in the sworn record that the

- 4 -

Employee did so. Secondly, leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not "abuse and neglect" as defined in the statute.

. . .

As to the common law whistleblower claim, the Employee must prove that a substantial factor in the discharge was his speaking out about illegal activities if an important public policy interest of the State has been embodied in the law. As explained above, Glen Oaks is not shown to have been engaged in illegal conduct or in any way to have posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock. No reasonable fact finder could find that Glen Oaks was engaged in illegal conduct.

Summary judgment will be granted in favor of the Defendants.

On appeal, Plaintiff contends the trial court erred by summarily dismissing his TPPA and common law claims based on its finding that Defendant was not shown to have engaged in illegal activity.[4] Plaintiff contends it was error to dismiss these claims because he had reasonable cause to believe that the reported incident constituted illegal activity. Further, Plaintiff insists he had a mandatory duty to report all "suspected" cases of neglect; therefore, his actions are protected regardless of whether the reported incident is proven to meet the statutory definition of neglect.[5]

## ANALYSIS

The employment-at-will doctrine is "a bedrock of Tennessee common law" and is a fundamental principle controlling the employer-employee relationship. *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (quoting *Franklin v. Swift Tranp. Co.*, 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006)). Under the doctrine, employment for an

---

[4] Plaintiff does not challenge the summary dismissal of his TAPA claim.

[5] Plaintiff articulated two additional issues; we believe the issue identified above incorporates Plaintiff's challenges to the trial judge's rulings. The other two issues read:

1. Under the TPPA and common law, must an employee conclusively prove that the reported incident was an actual violation of the law in order to satisfy the "illegal activity" element of a retaliatory discharge cause of action?
2. Under the TPPA and common law, is an employee terminated for making a well-founded good faith report of neglect protected from retaliatory discharge if a trial court later finds that the reported incident was not proven by the employee to meet the statutory definition of neglect at summary judgment?

indefinite period of time may be terminated by either the employer or the employee at any time and for any reason. *Id.* This doctrine, however, is not absolute, and some restrictions have been imposed on the right of an employer to discharge an employee. *Id.* At issue in this appeal are Plaintiff's claims under two of the recognized exceptions to the employment at-will doctrine: (1) the Tennessee Public Protection Act; and (2) the Tennessee common law. *See Williams v. Greater Chattanooga Public Television Corp.*, 349 S.W.3d 501, 513 (Tenn. Ct. App. 2011). We shall first discuss the TPPA claim.

## I. THE TENNESSEE PUBLIC PROTECTION ACT

The TPPA creates a cause of action for employees that are "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b)-(c). In cases of retaliatory discharge under the TPPA, courts apply a burden-shifting analysis similar to the one used in federal courts under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[6] *See* Tenn. Code Ann. § 50-1-304(f); *Williams*, 465 S.W.3d at 111. Tennessee's burden-shifting framework operates as follows:

> In any civil cause of action for retaliatory discharge brought pursuant to this section, or in any civil cause of action alleging retaliation for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. . . . The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

Tenn. Code Ann. § 50-1-304(f). In cases accruing on or after June 10, 2011, this burden-shifting framework applies at all stages of litigation, including motions for summary judgment. *See* Tenn. Code Ann. § 50-1-304(f).[7]

---

[6] The Tennessee Supreme Court has noted that the analytical framework set forth in the amended TPPA is "virtually indistinguishable" from the *McDonnell Douglas* approach. *Williams*, 465 S.W.3d at 113 n.15.

[7] In *Kinsler v. Berkline, LLC*, 320 S.W.3d 18, 26 (Tenn. 2011) and *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court held that the summary judgment analysis is
(continued…)

- 6 -

At the first stage of the *McDonnell Douglas* analysis, a plaintiff employee bears the burden of presenting evidence to establish a prima facie case of retaliatory discharge. *Williams*, 465 S.W.3d at 113. A plaintiff who asserts a claim under the TPPA must establish: (1) that he was an employee of the defendant; (2) that he refused to participate in or remain silent about "illegal activities" as defined by the statute; (3) he was terminated; and (4) an exclusive causal relationship existed between his refusal to participate in or remain silent about illegal activities and his termination.[8] *Franklin*, 210 S.W.3d at 528.

The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect health, safety, or welfare." Tenn. Code Ann. § 50-1-304(a)(3). The alleged illegal activity at issue here was neglect in the care of Ms. Harris in violation of the Tennessee Adult Protection Act. The TAPA defines "abuse and neglect" in the context of elder care as "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or obtain the services that are necessary to maintain that person's health or welfare." Tenn. Code Ann. § 71-6-102(1)(A).

In their motion for summary judgment, Defendants argued that Plaintiff failed to establish a prima facie case under the TPPA because he did not and could not establish that he refused to participate in or remain silent about "illegal activities" as defined by the statute. In support of their motion, Defendants' relied on Plaintiff's deposition testimony wherein Plaintiff acknowledged that the "neglect" at issue concerned an outdated bandage that was found on the ball of Ms. Harris' foot, although the wound was on her ankle. Defendants argued that because "the bandage was not found touching Ms. Harris'

to be applied in retaliatory discharge actions in the same way as in other cases, and rejected the federal *McDonnell Douglas* framework of allocations of burdens and order of presentation of proof of each party. *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 26 (Tenn. 2011). However, an amendment to Tenn. Code Ann. § 50-1-304, applicable to causes of action accruing on or after June 10, 2011, functionally overrules the retaliatory discharge summary judgment analysis of *Kinsler* and *Gossett*. *Williams*, 465 S.W.3d at 111 n.15 ("In 2011, the Legislature amended Section 50–1–304 to add a subsection (g), that set forth a statutory burden-shifting framework to be applied to all claims under the TPPA, both for summary judgment motions and for trial."). The cause of action in the instant case accrued in 2013; thus, the burden-shifting framework under the statute applies to Defendants' motion for summary judgment. *See* Andrée Sophia Blumstein, *Bye Bye Hannan? What A Difference Two Little Words, at Trial, Can Make in the Formulation of Tennessee's Summary Judgment Standard*, TENN. B.J., August 2011, at 17 (noting that after the amendment, in cases of retaliatory discharge courts will have to apply the federal burden-shifting standard of *McDonnell Douglas* at all stages of the case, including summary judgment).

[8] To establish the requisite causal relationship under the TPPA, a plaintiff must show that "his or her refusal to remain silent was the sole reason for the discharge." *Haynes v. Forman Stables, Inc.*, 483 S.W.3d 34, 37 (Tenn. 2015).

wound and there is no evidence that the bandage caused harm to Ms. Harris," the activities leading to Plaintiff's claim "in no way [rise] to the level of 'abuse and neglect' under [Tenn. Code Ann. § 71-6-102]." Generally stated, Defendants argued that this case arises from Plaintiff's "overreaction" to their being a small bandage on the bottom of a resident's foot, when the resident's wound, which was on her ankle, was properly dressed and bandaged.

Although he did not dispute the fact that the bandage was found on Ms. Harris' foot while her injury was located on her ankle, Plaintiff argued that the outdated bandage was evidence that the caretakers failed to sufficiently monitor and care for Ms. Harris and that this deprivation satisfies the statutory definition of neglect.

After reviewing the undisputed material facts, the trial court held that "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged is not illegal activity. . . [and] is not 'abuse and neglect' as defined in the statute." Based on this holding, the trial court summarily dismissed Plaintiff's TPPA claim.

On appeal, Plaintiff insists the trial court's holding was error because he is not required "to conclusively prove that the reported incident was illegal"; instead, he insists that "reasonable cause" for suspecting illegal activity is the standard. Further Plaintiff insists that summary judgment was not appropriate because "a disputed issue of fact remains about whether the reported incident of neglect meets the statutory definition of neglect," and "the question of whether the caretaker's misfeasance meets the statutory definition of neglect should have been left to the jury."

As Plaintiff correctly asserts, whether the alleged neglect of Ms. Harris constituted illegal activity as a matter of law is not dispositive of whether Plaintiff can establish a prima facie case of retaliatory discharge under the TPPA. As our Supreme Court has explained, "the [TPPA's] protection extends to employees who have *reasonable cause* to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997) (emphasis added).

We have discussed the "reasonable cause" requirement in several cases. In *Sanders v. Henry County*, an employee was terminated after he reported that his supervisor was "using the computer at his office to view personal, non-work-related emails containing what [the employee] considered to be inappropriate or pornographic pictures." *Sanders v. Henry County*, No. W2008-01832-COA-R3-CV, 2009 WL 1065916, at *8 (Tenn. Ct. App. Apr. 21, 2009). When he sued his employer for retaliatory discharge, the trial court granted the employer's motion for summary judgment, finding that the supervisor's actions were not "illegal activities" within the meaning of the TPPA; thus, the employee was unable to establish that he reported or remained silent about an "illegal activity." *Id.* at *4. On appeal, the employee argued that regardless of the legality or illegality of his supervisor's actions, he could maintain a

claim under the TPPA so long as he reasonably believed that his supervisor's actions were illegal. In addressing this argument, we stated:

> Plaintiff does not claim that he was aware of any law, regulation, or rule which he believed [his supervisor] was violating. Plaintiff simply argues that "all that is required" is that he had a reasonable belief that the actions were "illegal." Plaintiff claims that he reported "what [he] perceived as illegal activities in the work place." He basically claims that he thought [his supervisor's] actions were wrong, and his brief attempts to support his assertion with a discussion of taxpayers' rights, cases dealing with pornography and obscenity, and a reference to [the city mayor's] statement that it is not "good practice" to view non-work-related material while working. However, we find that the Court's statement in *Mason* does not extend to the lengths urged by Plaintiff. Plaintiff did not establish the essential elements of his claim for statutory retaliatory discharge simply by claiming that he thought [his supervisor's] actions were wrong.
>
> As stated above, an employee has to meet a "formidable burden" in establishing this element of the whistleblower statute. *Hill*, 2001 WL 694479, at *5; *Darnall*, 1999 WL 346225, at *5. From our review of the cases applying the statute, an employee cannot meet this burden simply by claiming that he believed his employer's actions were "wrong" or against "public policy."

*Sanders*, 2009 WL 1065916, at *8-9. We then provided several examples to further illustrate what is required to establish "reasonable cause":

> In *Stein*, 945 S.W.2d at 716, the Supreme Court considered an employee's claim that she was wrongfully discharged "in violation of public policy.". . . The Court held that in order for the plaintiff-employee to prevail, he or she must point to a "clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision[.]" *Id.*
>
> In *Gager v. River Park Hospital*, No. M2007-02470-COA-R3-CV, 2009 WL 112544, at *1 (Tenn. Ct. App. Jan.14, 2009), a nurse practitioner sued her former employer, a hospital, for common law and statutory retaliatory discharge, claiming she was terminated as a result of her "refusal to remain silent" about an "illegal and ill-advised policy" implemented by the hospital regarding when nurses could call physicians. *Id.* at *1. Specifically, the nurse practitioner alleged that the hospital policy "served not only to endanger the health of patients but also [was] in contravention of Tennessee statutory, common and regulatory law and Tennessee's explicit public

policy." *Id*. at *4. The trial court granted summary judgment to the hospital, and the Court of Appeals affirmed, explaining:

> Ms. Gager has failed to identify the law and policy that she contends was contravened . . . or what activities of River Park were illegal; the quoted provisions from her affidavit reveal only a policy implemented by River Park with which Ms Gager disagreed. . . . [Allegations of illegal activity] must be substantiated to some degree. . . . Without more than mere assertions by Plaintiff, the claim must fail . . . .

In *Collins v. AmSouth Bank*, 241 S.W.3d at 881-82, a bank employee was fired after a heated argument with her supervisor about placing money in a night deposit drop box. The bank employee filed a suit for retaliatory discharge against the bank and claimed that she was unsure of whether her supervisor violated federal banking regulations and bank policy by instructing her to put the cash in the night deposit drop box. *Id.* at 882. The employee cited a federal statute and regulation as support for her belief that the supervisor's request was illegal. *Id*. at 885-86. However, on appeal, we found that the statute and regulation provided "no legal basis" for the employee's assertion that the supervisor's actions were illegal, and we affirmed summary judgment in favor of the bank. *Id*. at 886 n.4.
. . .

In several other statutory retaliatory discharge cases, we have affirmed summary judgment in favor of employers where employees were terminated after making complaints against their employers for activities that did not rise to the level of "illegal activities" under the statute. *See, e.g.*, *Bridgestone/Firestone, Inc. v. Orr*, No. M2006-2638-COA-R3-CV, 2008 WL 80200, at *4 (Tenn. Ct. App. W.S. Jan. 7, 2008) *perm. app. denied* (Tenn. Jun. 23, 2008) (finding that the employee's refusal to remain silent about tire failures did not involve illegal activities); *Forrest v. City of Ridgetop*, No. M2002-01176-COA-R3-CV, 2003 WL 21954195, at *6 (Tenn. Ct. App. Aug. 15, 2003) (stating that a police officer's complaints regarding his employer's practices such as "ticket fixing" did not constitute illegal activities within the meaning of the statute); *Robins v. Flagship Airlines, Inc*., 956 S.W.2d 4, 6-7 (Tenn. Ct. App. 1997) (concluding that an airline employee's report to the company president regarding perceived problems with the maintenance department did "not even approach the subject of statutory or regulatory violations").

*Sanders*, 2009 WL 1065916, at *9-10.

Here, Plaintiff insists that he reasonably believed that Ms. Harris was neglected. However, as described above, to satisfy the standard set forth in *Mason*, Plaintiff must "identify the law and policy that [he] contends was contravened" and must be able to substantiate these allegations to some degree. *See Sanders*, 2009 WL 1065916, at *10 (quoting *River Park*, 2009 WL 112544, at *8).

To determine whether Plaintiff has met this burden, or whether a genuine issue exists which would preclude summary judgment, we must review the material facts. In this case, Ms. Harris, an elderly resident at Glen Oaks, had a persistent wound on her ankle that required daily monitoring at the facility as well as weekly treatment at the Wound Care Clinic. During a routine examination of the wound on her ankle on September 4, 2013, when an attendant at the Wound Care Clinic removed Ms. Harris' sock to examine the wound on the ankle, there was a bandage on the bottom of her foot that was dated "8/11/2013." At the conclusion of this routine visit, the old bandage was given to Richard Sanders, Ms. Harris' son, who drove his mother back to Glen Oaks. Upon arriving, Ms. Sanders, who was angry and visibly upset, met with Plaintiff to register a complaint concerning the old bandage being found on his mother's foot.

Although finding an old bandage on the bottom of Ms. Harris's foot was understandably disconcerting, we do not believe that such a discovery could reasonably lead to the conclusion that Ms. Harris was subject to elder neglect. We find it significant that the wound on her ankle was dressed appropriately on September 4 and the parties' respective statements of undisputed facts make no reference to any maladies or infirmities attributed to the old bandage being on the bottom of the foot of Ms. Harris. It is also significant that there is nothing in the statements of undisputed facts to indicate that the old bandage, which was dated "8/11/2013," or the same sock had been on the foot of Ms. Harris for the three weeks that had transpired since August 11.[9]

---

[9] Because the wound on the ankle was properly bandaged when Ms. Harris went to the Wound Care Clinic for her weekly visit on September 4, and all bandages on her ankle would have been removed and replaced on each of her weekly visits since August 11, the logical and reasonable inference to make is that the "8/11/15" bandage came off of her ankle during the following week but remained in the sock when the sock was removed. This is a reasonable inference because there is no evidence that Ms. Harris was not bathed properly between August 11 and September 4, which would have required removing the sock. In any event, a fresh bandage would have been placed on Ms. Harris' ankle during her next weekly visit to the clinic, which was on or about August 18, and on each weekly visit thereafter until she returned on September 4. Furthermore, we note that Plaintiff initially advanced the theory that the bandage was simply washed in Ms. Harris' sock and inadvertently placed back on her foot. Although these inferences are logical, the court is not permitted to draw an inference against the nonmoving party at the summary judgment stage. *See Martin v. Norfolk S. Ry. Co*., 271 S.W.3d 76, 84 (Tenn. 2008) (We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor).

- 11 -

Further, as was the case in *Sanders*, Plaintiff has failed to clearly identify the law and policy that he alleges was contravened and has not substantiated his allegations to a sufficient degree. *See Sanders*, 2009 WL 1065916, at *8-10. Like the employee in *Collins*, who filed suit for retaliatory discharge claiming that she was unsure of whether her supervisor violated federal bank regulations, Plaintiff acknowledges that he began his internal investigation unsure of whether there had been a violation of the Tennessee Adult Protection Act. Therefore, no reasonable jury could conclude that Plaintiff had reasonable cause to believe that these acts or omissions constituted illegal activities.

As described above, in an action for retaliatory discharge under the TPPA for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. Tenn. Code Ann. § 50-1-304(f). If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. *Id*.

In this case, we have affirmed the trial court's holding that "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not 'abuse and neglect' as defined in the statute." We have also concluded that Plaintiff did not have reasonable cause to believe that Defendants' acts or omissions constituted illegal activities. Therefore, Plaintiff cannot establish the second essential factor in order to establish a prima facie case for retaliatory discharge under the TPPA. Because Plaintiff cannot establish the second essential factor of a TPPA retaliatory discharge claim, that he refused to participate in or remain silent about illegal activity, he failed to establish a prima facie case; thus, burden of persuasion never shifted and our inquiry concerning Plaintiff's TPPA claim ends here. Accordingly, summary dismissal of Plaintiff's TPPA claim was proper.[10]

## II. THE COMMON LAW CLAIM

Plaintiff also asserted a claim for relief under the Tennessee common law for retaliatory discharge. In *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552 (Tenn. 1988), the Tennessee Supreme Court adopted a public policy exception to the employment-at-will doctrine "afford[ing] protection under the common law to employees

---

[10] Defendants asserted two additional grounds in their motion for summary judgment that the trial court did not address in its ruling. On appeal, Defendants state that we may affirm the dismissal of the TPPA claim on these grounds as well as the trial court's finding that the acts or omissions did not constitute illegal activities. Because we have affirmed the summary dismissal of the TPPA grounds for reasons stated in this opinion, it is not necessary for us to consider the additional grounds that were not considered by the trial court.

who refuse to participate in illegal activities or remain silent about them." *Williams*, 465 S.W.3d at 109 (citing *Chism*, 762 S.W.2d at 555-57).[11]

The essential elements of a common law retaliatory discharge claim are as follows: (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy. *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007).

These elements are similar to the requirements for a TPPA claim which, as noted earlier, are: (1) that the plaintiff was an employee of the defendant; (2) that he refused to participate in or remain silent about "illegal activities" as defined by the statute; (3) he was terminated; and (4) an exclusive causal relationship existed between his refusal to participate in or remain silent about illegal activities and his termination. *Franklin*, 210 S.W.3d at 528.

There are two important differences in the two claims, however, which may or may not be significant depending on the facts at issue. Under the TPPA, the plaintiff must establish that he refused to participate in or remain silent about "*illegal activities*" as defined by the statute common law, *see* Tenn. Code Ann. § 50-1-304(b), while under the common law the plaintiff must establish that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. *See Collins*, 241 S.W.3d at 884. The other difference between the common law and statutory retaliatory discharge claims is whether the employee's refusal was the sole reason or merely a substantial factor in his or her discharge. "[T]o benefit from statutory protection, an employee must demonstrate that his or her refusal was the sole reason for his or her discharge." *Collins*, 241 S.W.3d at 844; *see also Haynes v.*

---

[11] Two years later, the General Assembly enacted the TPPA which "essentially codified the common-law cause of action for retaliatory discharge articulated in *Chism*." *Williams*, 465 S.W.3d at 109-10. However,

> "[e]ffective July 1, 2014, the TPPA was amended to specifically 'abrogate[ ] and supersede[ ] the common law with respect to any claim that could have been brought under this section.' Tenn. Code Ann. § 50-1-304(g) (2014). Accordingly, under the statute as amended in 2014, in cases in which the plaintiff alleges retaliatory discharge for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief."

*Williams*, 465 S.W.3d at 109 n.11. This case accrued prior to July 1, 2014; thus the common law retaliatory discharge claim is still viable.

*Forman Stables, Inc.*, 483 S.W.3d 34, 37 (Tenn. 2015). On the other hand, a plaintiff asserting a common law retaliatory discharge claim need only show that the protected action was a substantial factor in the employer's decision. *Williams*, 465 S.W.3d at 111; *see also Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 28 (Tenn. 2011) ("[T]he legislature has chosen to enact a stringent standard . . . for recovery under a retaliatory discharge claim pursuant to the [TPPA].").

Accordingly, we now consider whether Plaintiff has established, or for purposes of summary judgment created a dispute of fact, that a substantial reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, as distinguished from whether he reasonably believed that the acts or omissions he reported were "illegal activities."

Without question, the abuse or neglect of an elder adult violates the public policy of Tennessee. This public policy is embodied by the Tennessee Adult Protection Act. *See* Tenn. Code Ann. § 71-6-101(b)(1) ("The purpose of this part is to protect adults coming within this part from abuse, neglect, or exploitation by requiring reporting of suspected cases by any person having cause to believe that such cases exist."). However, we have already concluded that the acts or omissions reported by Plaintiff could not reasonably be believed to constitute abuse or neglect under TAPA. *See* Tenn. Code Ann. § 71-6-102 (defining "abuse and neglect" in the context of elder care as "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or obtain the services that are necessary to maintain that person's health or welfare."). Thus, we similarly conclude that the acts reported by Plaintiff could not reasonably be believed to constitute a violation of Tennessee public policy. Accordingly, the trial court correctly held that "[Defendant] is not shown to have been engaged in illegal conduct or in any way to have posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock."

The foregoing notwithstanding, Plaintiff insists that he is entitled to the protection afforded under the common law because he believed he was under a mandatory statutory duty to report the incident. We respectfully disagree with this assertion because a condition precedent to the duty to report is that *one must have reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation*.[12] *See* Tenn. Code Ann. § 71-6-103(b)(1). The statute does not require the reporting of an act or omission that

---

[12] The TAPA states, in pertinent part: "Any person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having *reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation*, shall report or cause reports to be made in accordance with this part." Tenn. Code Ann. § 71-6-103(b)(1) (emphasis added).

does not violate a clear public policy or statutory or regulatory provision. Therefore, because no reasonable person could believe that these acts or omissions violate a public policy, the reporting of these acts does not afford Plaintiff the remedies available under Tenn. Code Ann. § 71-6-103 or the common law. Accordingly, summary dismissal of Plaintiff's common law claim was appropriate.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Daniel Richmond.

_____
FRANK G. CLEMENT, JR., JUDGE